**Edwin Nathaniel GEBHARD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22980.**

United States Court of Appeals,
Ninth Circuit.

Feb. 9, 1970.

Harold Ungerleider (argued), Miami Beach, Fla., Alan Saltzman, Hollywood, Cal., for appellant.

David R. Nissen (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before 'CHAMBERS and DUNIWAY, Circuit Judges, and SMITH,* District Judge.

DUNIWAY, Circuit Judge:

On September 1, 1967 the federal grand jury for the Central District of California indicted Gebhard on eight counts of perjury. On November 30, 1967 the original indictment was superseded and Gebhard was charged with thirty-two counts of perjury, the original eight plus twenty-four new counts. The indictment resulted from testimony given by Gebhard before a grand jury investigating cheating at gambling in the Los Angeles Friars Club. Of the thirty-two counts finally alleged, Gebhard·was convicted on fifteen, the government dropped four, nine were dismissed by the judge, and he was acquitted on the rest. The district court sentenced him to various terms on the different counts, the shortest being six months and the longest two years. The sentences are to run consecutively and the total sentence is seventeen years. Gebhard appeals. We affirm in part and reverse in part.

Gebhard was one of many witnesses called before the grand jury in the summer of 1967 during its investigation of illegal card games at the Friars Club. The first two times Gebhard appeared before the grand jury he invoked his privilege against self-incrimination. He was then taken before the District Judge who entered an order compelling Gebhard to testify under a grant of immunity. Gebhard returned to court and gave testimony on August 10, 17 and 31. Gebhard was questioned about his part in the installation and operation of electronic devices which were placed in the Friars Club to enable gamblers to fleece

---

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

fellow club members. Peek holes were made in the ceiling of the card rooms; then an observer stationed in the attic observed the players' cards and communicated his knowledge to one of the players by means of electronic devices. It was Gebhard's testimony about these matters and his relationship to various of the gamblers ultimately charged that led to his perjury indictment.

Gebhard raises six questions on this appeal. Each will be considered separately.

### 1. *Cruel and unusual punishment.*

■ Gebhard contends that a sentence of seventeen years for perjury constitutes cruel and unusual punishment in violation of the Eighth Amendment. It is true that this sentence is far larger than those normally given for perjury. It is also true that Gebhard received a much larger sentence for lying about what happened at the Friars Club than did those who were ultimately indicted by the grand jury for substantive offenses. However, there is another aspect of the case. Gebhard was under a grant of immunity during the course of his testimony He chose to lie after being given protection from any prosecution that might have been generated by his testimony.

The statute involved in this case, 18 U.S.C. § 1621,[1] provides for sentences of up to five years on each count. Thus it is conceivable that Gebhard could have received a sentence of as high as seventy-five years under the fifteen counts on

which he was convicted. Instead, he was given sentences of from six months to two years on the various counts. The fifteen different sentences, to run consecutively, total seventeen years.

■■ The settled rule is that appellate courts will not change a sentence which falls within the limits of the statute. See Bryson v. United States, 9 Cir., 1959, 265 F.2d 9, 13 (the sentence, being within the limits of the statute, will not be disturbed on the grounds that it is cruel and unusual punishment); Pocatello v. United States, 9 Cir., 1968, 394 F.2d 115; McCartney v. United States, 9 Cir., 1967, 382 F.2d 116; Jones v. United States, 1963, 117 U.S.App.D.C. 169, 327 F.2d 867. We cannot hold that the sentences, permitted by 18 U.S.C. § 1621, are cruel and unusual punishment merely because they were imposed as consecutive sentences.

### 2. *Insufficiency of the indictment.*

Gebhard contends that the indictment should have been dismissed because it did not sufficiently allege proper materiality. The indictment does allege that Gebhard "did unlawfully, knowingly and willfully, and contrary to said oath state *material* matter which he did not believe to be true, * * *" (*Emphasis added*) The crux of this argument is that the indictment is insufficient because it failed to state the nature of the grand jury's investigation. It is true that the indictment did not state the nature of the grand jury's investigation. The relevant portion of the indictment is reproduced in the margin.[2]

---

1. 18 U.S.C. § 1621. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall except as otherwise expressly provided by law, be fined not more than $2,000 or im-

prisoned not more than five years, or both."

2. "On or about August 10, 1967, in Los Angeles County, within the Central District of California, defendant Edwin Nathaniel Gebhard, having duly taken an oath before a competent tribunal, the Grand Jurors of the United States of America, duly impaneled and sworn in March, 1967, * * * and inquiring into a matter then and there pending before said grand jurors in which a law of the United States authorized an oath to be administered, that he would testify truly.

■ The general rule is that the materiality requirement of a perjury indictment may be met by a general statement that the matter was material. Woolley v. United States, 9 Cir., 1938, 97 F.2d 258; Paternostro v. United States, 5 Cir., 1962, 311 F.2d 298; Bilderback v. United States, 5 Cir., 1957, 249 F.2d 271; Williams v. United States, 5 Cir., 1957, 239 F.2d 748; Travis v. United States, 10 Cir., 1941, 123 F.2d 268. There is also authority in this circuit that an indictment for perjury which follows the wording of the statute is sufficient, Vuckson v. United States, 9 Cir., 1966, 354 F.2d 918, 922; Arena v. United States, 9 Cir., 1955, 226 F.2d 227. See also United States v. Debrow, 1953, 346 U.S. 374, 377, 74 S.Ct. 113, 115, 98 L.Ed. 92 where the Court said, "The charges of the indictments followed substantially the wording of the statute, which embodies all the elements of the crime, and such charges clearly informed the defendants of that with which they were accused, * * *"

Gebhard relies on United States v. Cobert, S.D.Cal., 1964, 227 F.Supp. 915. In that case Judge Byrne's opinion acknowledged the general rule that the materiality requirement can be met by a general statement that the matter was material. He then distinguishes a number of cases applying this rule (including those cited above) by showing that there was more information in the indictments in those cases than mere allegations of materiality. Judge Bryne was concerned that a defendant would not be well enough informed to prepare a defense.[3]

■■ In the present case, we feel that no harm could have come to the defendant because of a failure to state the nature of the grand jury's investigation in the indictment. First, assuming that he did not know what the nature of the grand jury's investigation was after appearing before it five times, it seems clear that merely by reading through the thirty-two counts of the indictment, Gebhard could have ascertained the nature of the investigation, i. e., crooked gambling at the Friars Club. The purpose of an indictment is to inform a defendant about the charges against him so he can defend himself. In a perjury trial, assuming that, as in this case, the indictment lists the questions asked and the answers given, there is little else needed to enable the accused to prepare a defense. He knows that the questions have been asked, and he is told that the government believes his answers were false. He must be prepared to defend his answers. Under these circumstances the indictment fairly warned Gebhard of the charges against him. We see no prejudice from the failure to include the nature of the grand jury's investigation. Any ambiguity in the indictment could have been cleared up by a request for a bill of particulars under F.R.Crim.P. 7 (f) and this, in fact, was done.

3. *Selection of the jury.*

■ Gebhard says that the selection of both the grand and petit juries was unconstitutional because they did not involve an adequate cross-section of the community. The juries were selected at random from the telephone directory. Gebhard lauds the new federal jury law[4] which requires juries to be selected from voter registration lists, as a system that avoids blue ribbon and key man juries. Random selection from the telephone directory also substantially avoids both of these problems. Juries selected from

did unlawfully, knowingly and willfully, and contrary to said oath state material matter which he did not believe to be true, in that in answer to questions the defendant testified as follows: * * *"

3. United States v. Cobert, S.D.Cal., 1964, 227 F.Supp. 915: "Although materiality of the testimony is not the central core of the perjury statute, it is a matter which the plaintiff must prove. Therefore, it is a matter which the defendant must be informed of so that he will understand and be able to prepare a defense to the charges against him." (at 922).

4. U.S.C. §§ 1861–1869. This law went into effect in December, 1968 and was not a factor in Gebhard's trial.

telephone directories have been found constitutional in the following cases: Swain v. Alabama, 1965, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (jury selected from city directories, church lists, and telephone directories); Local 36 of International Fishermen and Allied Workers v. United States, 9 Cir., 1949, 177 F.2d 320, 341; Billingsley v. Clayton, 5 Cir., 1966, 359 F.2d 13. We find nothing unconstitutional in the method of jury selection.

### 4. *Sufficiency of the evidence to show that the testimony was given under oath.*

Gebhard contends that there was insufficient proof to establish that his testimony was given under oath. 18 U.S.C. § 1621 requires that the false testimony be given while the speaker is under oath. Gebhard testified on three different days, the 10th, 17th, and 31st of August. As to the 10th of August, the court reporter, Mr. Raven, could not remember of his own knowledge that the oath had been given. However, both his notes of the proceeding and the subsequently typed transcript show that Gebhard was sworn. It is less clear that the oath was administered on the 17th of August. The court reporter's notes do not indicate it although, the typed transcript of the hearing states that Gebhard was sworn again. It is clear from the record that the oath was again administered on August 31, the court reporter testified that she recalled the oath being administered.

■ There was sufficient evidence for the jury to find that Gebhard had been sworn on the first day, the 10th of August. Subsequent testimony was all part of the same hearing, and Gebhard was bound by his original oath. Thus regardless of whether or not Gebhard was resworn on the 17th of August, he remained bound by the oath he had given on the 10th. Moreover, there is evidence that he was sworn on the 17th. Under these circumstances we find that Gebhard was under oath on each occasion when he testified.

### 5. *The two witness rule.*

■ Gebhard alleges that the trial court erred in its charge to the jury about the quantum of proof needed for a perjury conviction. The traditional rule, long adhered to in perjury cases, is that perjury must be proved by the testimony of two witnesses or the testimony of one witness plus corroborating evidence. This rule is designed to prevent a defendant from being convicted on the strength of his oath versus that of another. In this case the judge gave the standard instruction regarding this quantum of proof in perjury cases, but at the end he added something extra. The instruction is:

"The law requires that, in a perjury case, the falsity of the testimony in question be proved by more than the uncorroborated testimony of a single witness. Thus, the testimony of two witnesses, or the testimony of one witness plus some other corroborative evidence, is required to establish this element of the offense.

"Now, this general rule applies—it is variously referred to as the double-witness rule or the two-witness rule or the witness plus corroborative evidence rule. Now, this rule applies with respect to most of the Counts in this Indictment now before you, namely,—and I think you had better take these down. This rule of so-called double-witness rule or the single witness plus other corroborative evidence rule applies to these counts: COUNTS ONE, FIVE, NINE, TEN, ELEVEN, THIRTEEN, FIFTEEN, TWENTY, TWENTY-ONE, TWENTY-TWO, TWENTY-SIX, TWENTY-SEVEN, TWENTY-EIGHT, and THIRTY-ONE. [The judge subsequently included count thirty-two when reminded that he had omitted it.] It has been referred to, as I say, in addition, as the double-witness rule, the witness plus corroborative evidence rule. It has been referred to as the rule that applies to so-called objective determination of falsity. And those are the

counts, I should say, where the court is instructing you that that rule applies.

"However, with respect to the other counts left in this indictment, namely COUNTS TWO, THREE, FOUR, SIX, SEVEN and EIGHTEEN, where it is alleged that the falsity is in the belief or the memory of the accused, that is, the state of mind of the accused, then the rule is that such alleged falsity in belief or memory, that is, state of mind, may be proved by circumstantial evidence alone if, of course, it is sufficient to produce conviction in your minds of such falsity beyond a reasonable doubt upon all the evidence in the case and in accordance with all the other instructions being given to you by the court."

Since Gebhard was acquitted on count two, we need only concern ourselves with counts three, four, six, seven, and eighteen, the counts submitted under the instruction which deviated from the standard charge. The following questions comprise the substance of each charge. In every case the indictment alleged that Gebhart either knew or recalled the information he denied possessing.

Count 3:

"Q. In January, 1966, sir, did you receive in any manner, whether directly or indirectly, from Ricky Jacobs a transmitter, receiver, or both?

A. Again, Mr. Nissen, I don't really remember whether I got anything from Mr. Jacobs in 1966.

Q. How many times have you received transmitters and receivers from Mr. Jacobs, sir?

A. None that I recall."

Count 4:

"Q. Is it your custom to lie to the F.B.I. sir?

A. I wouldn't go out of my way to tell the F.B.I. the truth if I thought it would get anybody in trouble, because as far as I'm concerned, if they were investigating subversion, communism, narcotics or prostitution I would give them my 100% support and my active help without even being requested.

Q. Now, sir, you did, however, tell them, did you not, that Jacobs had given you a device to be repaired?

A. If I told them at the time, evidently I told them that, I don't recall it.

Q. I'm asking you, did you tell them?

A. I don't know."

Count 6:

"Q. It is a fact, is it not, sir, that you know that Mr. [Ricky] Jacobs uses or has used electronic devices?

A. Do you mean to gamble with?

Q. For any purpose, sir.

A. As far as I know, he has never used it to gamble with, not to my knowledge."

Count 7:

"Q. Is there anybody else that you recall furnishing electronic cheating devices to, sir?

A. No sir, I can't remember any others that I delivered or gave or sold.

Q. You did know that [Ricky] Jacobs was using such equipment to cheat in card games did you not sir?

A. No, sir I did not."

Count 18:

"Q. Actually, who had told you that there was a burglar alarm in the [Friars Club] building?

A. I didn't know there was."

█ The responses to the questions involved in these counts of the indictment were invariably, "I don't recall" or "I don't know," or "I don't remember." Given answers of this nature, it would be difficult to find two witnesses to testify that the defendant did in fact know or believe or recall a matter which he said he did not. Absent a contrary admission by the defendant there would be no way to get direct evidence that the defendant did know or recall the fact that he denied knowing or

recalling under oath. Therefore only circumstantial evidence can be used to establish the knowing lies of the defendant. If the government can build up a strong enough set of facts to show what the truth of the matter was and what the defendant must have known, this should be enough to go to the jury. The government's argument is supported by United States v. Nicoletti, 7 Cir., 1962, 310 F.2d 359, cert. denied 1963, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968. In that case the defendant testified under oath that he did not recall having an interview with the F.B.I. the preceding year. The court was persuaded by the government's argument that proof of recollection cannot be made by direct evidence. The court held that the nature of the alleged false testimony was such that the so-called two witness rule was inapplicable and the refusal of the trial court to instruct the jury respecting the two witness rule was not error. The court also held that the charge was susceptible of proof by circumstantial evidence sufficient to satisfy the jury of the defendant's guilt beyond a reasonable doubt. See also United States v. Magin, 7 Cir., 1960, 280 F.2d 74, cert. denied, 1960, 364 U.S. 914, 81 S.Ct. 271, 5 L.Ed.2d 228.

■ Under the circumstances it was correct for the judge to instruct that the charges could be proved by circumstantial evidence. Further it was not error for the judge to divide the counts into those provable under the two-witness rule, and those that could be established by circumstantial evidence. Had the trial judge left that task to the jury, neither we nor the trial judge would have any way of knowing which counts were decided on circumstantial evidence, and which were decided under the two-witness rule. It might well have been error not to separate the charges.

■ There are, however, two points that require reversal on two of the counts submitted under the modified instruction. We find that the answer given in count 4 "evidently I told them. * * *" as a matter of law served as enough of an admission to preclude a

perjury count. Second, we find that the answers given to count 18 could be construed as saying that no one had told him of the burglar alarm. The prosecution's question implied that someone had told Gebhard of the existence of the alarm. This count should have been submitted under the two-witness instruction. The convictions under counts 4 and 18 must be reversed.

### 6. *The repeating of instructions.*

■ Gebhard argues that it was error for the judge to repeat the questioned instruction about quantum of proof to the jury. Had the instruction been erroneous, repetition might have compounded any harm involved. But the instruction was correct. Gebhard further argues that it is error to repeat an instruction favorable to the government without repeating those instructions favorable to the defense where failure to do so might mislead the jury. In this case the judge repeated the questioned instruction by request, immediately after he had given it. This was not error. Later, the jury reminded the judge that he had forgotten to categorize count 32. At the time Gebhard's attorney objected to the judge repeating his instruction. The judge did not repeat it. He merely stated that count thirty-two should be classified as a two-witness rule count.

■ Still later, the jury asked the judge whether it had to obey his instruction on two-witnesses: the jury wanted to know if it could ignore the two-witness rule if the jurors' common sense told them that a certain fact had been established. The judge told the jury that it could not ignore the rule, repeated the instruction, and also repeated instructions dealing with presumption of innocence, reasonable doubt, direct and circumstantial evidence and others. Gebhard's attorney objected. The judge offered to read to the jury any other instruction that defense counsel felt was necessary. This offer was accepted, but defense counsel never suggested that any other instructions be read to the jury.

We find no error in the repetition of instructions.

#### 7. *Pressure to return a verdict.*

 Gebhard argues that there was pressure on the jury to return a verdict. After a careful review of the record we are convinced that this is not correct. In fact, it appears that the jury had arrived at verdicts for nineteen of the twenty-one counts presented to them before any possible question of pressure could have arisen. Since the judge dismissed the last two counts before the jury could arrive at a decision, we can see no harm to Gebhard from any of the procedure involved in getting the jury's verdict. The trial judge made it clear at all times that he was not trying to get the jury to hurry, and the jurors acknowledged that they were not under pressure.

#### 8. *Admission of the grand jury transcript.*

 Gebhard argues that it was massive error to permit the jury to hear the complete transcript of the defendant's testimony before the grand jury. He filed a motion on April 11, 1968 to limit introduction of testimony from the grand jury transcript to those questions and answers which appeared in the indictment. The motion was overruled *sub silentio;* the transcript was read to the jury. During the reading of the transcript, Gebhard's attorney made no attempt to object to specific portions of the transcript that he felt were harmful to his client.

In all of the transcript there only appear to be two segments that might have prejudiced the defendant in the eyes of the jury, the discussion of Gebhard's two arrests. He was asked about a Houston arrest in relation to questions involving his presence in Texas at a specific time. He was asked about an arrest in Kenosha, Wisconsin after he had stated that he could not remember any places where he had furnished or installed devices used for gambling. The Kenosha arrest involved attempts to tap a Western Union line.

The government argues that it had five reasons for including the full transcript. (1) Gebhard had claimed that the quotations in the indictment were taken out of context. (2) Because Gebhard argued that he was suffering from an impaired memory, the full transcript was necessary to highlight his ability to recall past events. (3) The full transcript showed Gebhard's evasive manner and demeanor, thus bearing upon whether his state of mind was such that his falsehoods were willful. (4) The transcript was important to reveal admissions by Gebhard which showed that other parts of his testimony were false; these admissions constituted evidence which corroborated other evidence of falsity, and (5) The full transcript was admissible to how the materiality of the perjured testimony to the subject matter of the grand jury's investigation. We are convinced that there is merit in these arguments, and thus conclude that the trial court was correct in overruling a motion so sweeping as to preclude all portions of the grand jury transcript save those quoted in the indictment.

 This does not mean that in every case where a witness is charged with perjury, the full transcript of his testimony is to go to the jury. The defendant should object to any portions of the transcript which he feels are prejudicial to his cause. Gebhard did not do this, and he may not now argue that it was error to include them.

#### 9. *Repetitious counts.*

 Finally, there is a defect that was not briefed, but which appears on the face of the indictment. Gebhard was charged with thirty-two counts of perjury. If he in fact told separate lies, each of which could have hindered the grand jury in its investigation, then he could properly be separately charged for each lie. On the other hand, we do not think it proper that the government bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury

counts. The following is a summation of some of the counts which involve the same question for all practical purposes: Count 3. Did you ever receive a transmitter, receiver or both from Jacobs? Answer: No. Count 4. Did Jacobs give you a device to be repaired? Answer. No. Sentence; two years for count 3 and one year for count 4.

* * * Count 6. Did you know that Jacobs uses electronic devices to gamble with? Answer. Don't know. Count 7. You did know Jacobs was using such devices (electronic) to cheat in card games. Answer. No. Sentence; 6 months each for counts 6 and 7.

* * * Count 13. Did you ever furnish any electronic equipment to anyone for use at the Friars Club if it should open up? Answer. No. Count 15. Is it your testimony that at no time did you ever furnish equipment for use at the Friars Club such as electronic equipment? Answer. No. Sentence; 2 years each on counts 13 and 15.

* * * Count 18. Who had told you there was a burglar alarm in the Friars Club building? Answer. I didn't know there was one. Count 31 * * * nobody had told you there was a burglar alarm in the process of being installed? Answer. That's correct, I didn't know it. Count 32. Defendant is shown burglar alarm and denies having seen it before. Sentence; 6 months on each 18, 31, and 32.

■ We are of the opinion that only one count in each of these groups should be allowed to stand. Otherwise a prosecutor could run up a possible perjury sentence indefinitely merely by repeating the same question. Single punishment for a single lie should suffice. Gebhard's conviction should be reversed as to counts 3, 6, 13, 18, and 31.

The convictions on counts 3, 4, 6, 13, 18, and 31 are reversed, with directions to dismiss. The convictions on all other counts are affirmed.