UNITED STATES of America, Plaintiff-Appellee,

v.

Peter N. LAZAROS, Defendant-Appellant.

No. 72–1721.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1973.

Decided June 11, 1973.

Gerald M. Franklin, Detroit, Mich., Frank Oliver, Chicago, Ill., Paul G. E. Valentino, Pontiac, Mich., Melvin B. Lewis, Chicago, Ill., for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Peter M. Shannon, Jr., Criminal Appellate Section, Dept. of Justice, Washington, D. C., for plaintiff-appellee; Henry E. Petersen, Asst. Atty. Gen., Kurt W. Muellenberg, Sidney M. Glazer, Dept. of Justice, Washington, D. C., on brief.

Before MILLER, KENT * and LIVELY, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The defendant, Peter Lazaros, appeals his conviction by a jury on twelve counts of perjury in the District Court for the Eastern District of Michigan. He was sentenced to one year and a day on each count, to run consecutively.

During the state trial of a criminal associate, Joseph Barbara, on charges of extortion and rape of Lazaros' wife, the defendant became an informer for the prosecution. During the ensuing months Lazaros remained under heavy protection provided by the Michigan State Police. During this period Lazaros maintained a close contact with Donald DeBoer, an internal affairs investigator of the Internal Revenue Service. He made accusations against at least three IRS officials, Harris, McDonald and Olszewski. Also from photographs, Lazaros identified IRS agents Gardner, Lockwood, Lee, and Getto, as having accepted money from underworld figures. He also implicated certain former Detroit city officials. DeBoer warned Lazaros that making a false statement to him was a violation of 18 U.S.C. § 1001, a felony for which Lazaros could be imprisoned for five years and fined up to $50,000.00.

A grand jury was convened on June 12, 1969, to investigate the accusations. On June 26, 1969, invoking the Fifth Amendment, he refused to testify. Over the next two months some 30 to 40 witnesses were called to testify before the grand jury, including DeBoer. Apparently a rift had developed between DeBoer and Edward O'Leary, the United States Attorney representing the government. DeBoer continued to believe Lazaros, while O'Leary concluded that no bribery had occurred. On August 21, 1969, Lazaros was recalled before the grand jury. In his first appearance on that day, he was asked about the bribery of certain governmental officials. He refused to testify, again asserting his Fifth Amendment rights. O'Leary then sought and obtained immunity under 18 U.S.C. § 2514 from Judge Thornton, United States District Judge for the

---

* Judge Kent participated in the decision in this case and concurred in this opinion prior to his death on May 28, 1973.

Eastern District of Michigan. In his second appearance on August 21, Lazaros answered these same questions in an enigmatic and evasive manner. He was then returned to Judge Thornton, who held him in civil contempt, and remanded him to the custody of the federal marshal until such time as he would answer directly the questions propounded by the prosecutor.

Finally on the afternoon of August 21, Lazaros purged himself of the contempt by giving direct answers to the prosecutor's questions. Based on the answer to these questions, he was indicted for perjury.

Specifically, Lazaros testified that four Internal Revenue agents, Lockwood, Lee, Gardner and Getto, had accepted envelopes containing $1,000 each at a Christmas party given by Lazaros at the Kingsley Inn in Birmingham, Michigan, in December of 1967. Furthermore, he testified that the former Mayor of Detroit, Jerome Cavanagh, and the former purchasing agent of Detroit, Arthur Stone, accepted envelopes that contained money. Finally, Lazaros testified that two IRS agents, Getto and Conrad, and a member of the Detroit police force, Dunleavy, received money under the pretext of a game of chance, after a prize fight that occurred in Cleveland in 1964. His testimony was that he was personally present at each of these exchanges.[1]

18 U.S.C. § 1621 provides:

Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.[2]

Lazaros' main defense at trial was that his testimony was coerced, and therefore was not willful within the meaning of 18 U.S.C. § 1621. Lazaros argues that he was given a Hobson's choice. If, after he was in contempt for giving evasive answers, he had chosen to go to jail, he was in danger for his life.[3] If he took the stand and testified that the bribery had never taken place, he could be convicted of a felony for giving false statements to a government official.[4] Finally, if he took the stand and retold his story that he had given to the IRS officials, he would be convicted of perjury. This explanation was presented to the jury under proper and unchallenged instructions to the effect that if defendant's statements before the grand jury were indeed made as the result of coercion or duress they would not come within the ambit of the perjury statute. We find that there is sufficient

1. The indictment is attached as Appendix One to this opinion.

2. The essential elements of a violation of 18 U.S.C. § 1621 are the taking of an oath, in a case where a law of the United States authorizes the oath to be administered, to testify truly, and willfully and contrary to such oath making a false statement, as to a material fact and which the defendant did not believe to be true. United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970).

3. He points out that a week before his testimony, another government informer had been killed by the administering of a cyanide cupcake while he was in the Wayne County jail. He testified that he felt that he would receive the same treatment were he confined there.

4. Although DeBoer told Lazaros that giving him false statements was a felony, this was incorrect information. Lazaros apparently could not have been convicted under 18 U.S.C. § 1001 for any statements he made to DeBoer. See e. g., Friedman v. United States, 374 F.2d 363 (8th Cir. 1967).

evidence in the record to support the jury's conclusion that Lazaros' testimony was willfully false. *See* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The further argument is made that Lazaros' testimony before the grand jury was not material. Consequently, even though false, the testimony may not be used as a basis for a perjury conviction. An aspect of the same theory of defense is the insistence that the inquiry as to the bribery of the government officials was concluded by the time Lazaros was recalled to the stand on August 21, 1969. Finally, it is said that the reason he was recalled was to force him to commit perjury or to release his testimony to the public (a violation of the doctrine of grand jury secrecy), neither of which is a legitimate function of the grand jury.

In support of these theories the defendant relies on Brown v. United States, 245 F.2d 459 (8th Cir. 1957); United States v. Cross, 170 F.Supp. 303 (D.C.D.C.1959); United States v. Icardi, 140 F.Supp. 383 (D.C.D.C.1956). The defendant relies on the testimony of the prosecuting United States Attorney, Edward O'Leary, that by August 21, 1969, he had concluded that none of the officials accused by Lazaros had taken bribes and that all were innocent of the charges made against them. Also two grand jurors testified that the investigation was nearly complete when Lazaros was recalled.

We believe that these theories of defense are without merit. The test of materiality is "whether the false testimony was capable of influencing the tribunal on the issue before it." Fraser v. United States, 145 F.2d 145, 149 (6th Cir. 1944) quoting Blackmon v. United States, 108 F.2d 572, 573 (5th Cir. 1940). Furthermore, "materiality refers to testimony that will legally evidence the propositions to be proved." Fraser v. United States, *supra* at 149 of 145 F.2d, *quoting* United States v. Slutzky, 79 F.2d 504, 506 (3rd Cir. 1935).

However, materiality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at issue. Leads to further inquiry may be of material worth to an investigation. Thus the test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation.

United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970) (citations omitted); *see* United States v. Manfredonia, 414 F.2d 760, 764 (2d Cir. 1969); United States v. Henderson, 185 F.2d 189, 191 (7th Cir. 1950).[5]

Lazaros was the main accuser of the government officials. It was because of his accusations that the investigation was initiated and the grand jury convened. His testimony was relevant to the bribery charges under investigation. Regardless of the actual beliefs of the United States Attorney, the grand jury was entitled to hear Lazaros's testimony. Unless protected by privilege, the "public [through the grand jury] . . . has a right to every man's evidence." Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972).

Furthermore the testimony sought from Lazaros was within the legitimate scope of the grand jury's functions.

> [T]he grand jury . . . has the dual function of determining if there is probable cause to believe that a

5. The testimony need not actually impede the grand jury investigation. The question, to be material, need only pertain to the same general subject matter as the investigation. Vitello v. United States, 425 F.2d 416, 424 (9th Cir. 1970); *see* United States v. Tyrone, 451 F.2d 16, 18 (9th Cir. 1971).

crime has been committed and of protecting citizens against unfounded criminal prosecutions.

Branzburg v. Hayes, *supra* at 687, 92 S. Ct. at 2659 (footnotes omitted).

Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."

Branzburg v. Hayes, *supra* at 688, 92 S. Ct. at 2659, *quoting* Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919). *See* United States v. Neff, 212 F.2d 297, 301 (3rd Cir. 1954).

A grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed;

United States v. Stone, *supra* at 140.

Obviously many investigations would be incomplete and superficial if the grand jury failed to call those persons who appear to know the most about matters under inquiry.

United States v. Sweig, 441 F.2d 114, 121 (2d Cir. 1971).[6]

■ We conclude that Lazaros's testimony before the grand jury was clearly material and well within the legitimate scope of its inquiry.[7]

Finally, the defendant asserts that his conviction should be barred by the doctrine of entrapment as a matter of law.

Unlawful entrapment involves the manufacture of crime by law enforcement officers for the purpose of pro-

6. Reliance on Brown v. United States, 245 F.2d 459 (8th Cir. 1957); United States v. Cross, 170 F.Supp. 303 (D.C.D.C. 1959); United States v. Icardi, 140 F. Supp. 383 (D.C.D.C.1956), is misplaced. In *Cross* and *Icardi*, both defendants were convicted of perjury for testimony before a Congressional committee. In both cases the court held that the testimony that was given was not pursuant to any valid legislative purpose, but rather was publicly to try and convict the particular individual of the allegations against him. Obviously, the legislative investigatory powers cannot be used as a substitute for the judicial process, particularly when the individual is subsequently convicted of perjury on the basis of the testimony that he gave before the legislative committee.

*Brown* presents a different situation. In that case the defendant was convicted of perjury based on testimony before a grand jury sitting in Nebraska. The testimony was given in regard to activity that occurred in St. Louis, Missouri. There was no connection between any of the alleged criminal activity and Nebraska, other than the fact that the grand jury happened to be sitting there. The Eighth Circuit held that the Nebraska grand jury had no jurisdiction to investigate criminal conduct occurring in Missouri, and consequently, the testimony

before the grand jury could not be used to support a perjury conviction. This is obviously not the case here. The grand jury was investigating bribery that had occurred primarily within the jurisdiction in which the grand jury was sitting. The perjurious testimony related to incidents that occurred within that jurisdiction. The grand jury had both subject matter and territorial jurisdiction over the matters to which the perjurious testimony pertains.

7. As a corollary the defendant theorizes that the grant of immunity by the district court was void because the district court's jurisdiction was fraudulently invoked. The defendant points out that in his application for immunity, the United States Attorney recited several facts, specifically alleging that the grand jury was presently investigating the possibility of bribery; and that Lazaros's testimony was material to this investigation. These assertions, according to the defendant, were false. We find otherwise on the record before us. We find that the grand jury's investigation of the bribery was not complete when Lazaros was called to testify on August 21, 1969, and that the grand jury investigation was not fraudulently invoked.

curing the prosecution of an otherwise innocent person * * *.

Thus, where a person has no previous intent, or no previous purpose to violate the law, but he is induced or persuaded by a law enforcement officer to commit the crime, he is the victim of an unlawful entrapment with respect to that particular crime, and the law as a matter of policy forbids his conviction in such a case * * *.

United States v. Curtis, 430 F.2d 1159, 1161 (6th Cir. 1970); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrels v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932).

 It is true that Lazaros was forced to tell what he knew about the alleged events. He was not forced, induced, or coerced, however, into giving *false* testimony before the grand jury. Lazaros urges that he had no predisposition to commit this crime. He points out that he refused initially to testify, and finally testified only under threat of being jailed for contempt of court. This argument misses the point because Lazaros, as we have said, was only compelled to state what he knew, not to testify falsely.

For these reasons we feel that entrapment was not established as a matter of law, and that the issue was properly submitted to the jury.

The defendant raises two final issues. First, he argues that the indictment was defective because it divides a single crime into twelve different ones. Also it is argued that counts 9 and 11 do not state an offense.

 As to the first issue, the defendant relies on Gebhard v. United States, 422 F.2d 281 (9th Cir. 1971). In *Gebhard* the court stated:

If he in fact told separate lies, each of which could have hindered the grand jury in its investigation, then he could properly be separately charged for each lie. On the other hand, we do not think it proper that

the government bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts.

. . . . . .

Single punishment for a single lie should suffice.

422 F.2d at 289–290; *See* United States v. Tyrone, *supra,* 451 F.2d at 18. The government concedes that under *Gebhard,* the sentences imposed on counts 5, 6, and 11 should be vacated but that the sentences on the remaining counts should be affirmed. We agree with this position. Count 9, in our view does state a separate offense.

The sentences imposed on counts 5, 6 and 11 are accordingly vacated and the convictions and sentences as to all remaining counts are hereby affirmed.

APPENDIX

INDICTMENT

[Record Item 1]

(Filed August 26, 1969)

The Grand Jury charges:

COUNT ONE

1. On or about August 21, 1969, in the Eastern District of Michigan, Southern Division, Peter N. Lazaros, having duly taken an oath before a competent tribunal, that is, the Grand Jury of the United States of America, duly impaneled and sworn in the United States District Court for the Eastern District of Michigan, and inquiring for that District in a case then and there pending before the said Grand Jury in which a law of the United States authorizes an oath to be administered, that he would testify truly, did wilfully and knowingly and contrary to said oath, state material matters which he did not believe to be true, that is to say:

2. At the time and place aforesaid the Grand Jury was conducting an investigation to determine whether there had been committed in the Eastern District of Michigan, and elsewhere, viola-

tions of the laws of the United States, to wit: bribery of public officials in violation of Section 201, Title 18, United States Code.

3. It was material to this Grand Jury investigation to determine, among other things, whether Anthony Getto, also known as Tony Getto, an Internal Revenue Service employee, John Gardner, an Internal Revenue Service employee, Ellis Lockwood, an Internal Revenue Service employee, James Lee, an Internal Revenue Service employee, Jerome P. Cavanagh, Mayor of the City of Detroit, and Arthur Stone received any money or thing of value at the Kingsley Inn, 1475 Woodward, Bloomfield Hills, Michigan, on December 17, 1967, at which time and place Peter N. Lazaros was also present; further, it was material to this Grand Jury investigation to determine, among other things, whether the aforementioned individuals were present at the Kingsley Inn, 1475 Woodward, Bloomfield Hills, Michigan, on December 17, 1967, at which time and place Peter N. Lazaros was also present.

4. At the time and place alleged in paragraph 1 herein, Peter N. Lazaros appeared as a witness before the aforesaid Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material matters as follows:

"Q. Directing your attention to the Christmas party in December of 1967, did you or did you not give an envelope to Anthony Getto containing a thousand dollars?

A. I did."

5. The aforesaid testimony of Peter N. Lazaros, as he then and there well knew and believed, was not true in that Anthony Getto, also know as Tony Getto, an Internal Revenue Service employee, John Gardner, an Internal Revenue Service employee, Ellis Lockwood, an Internal Revenue Service employee, James Lee, an Internal Revenue Service employee, Jerome P. Cavanagh, Mayor of the City of Detroit, and Arthur Stone

did not receive any money or thing of value at the Kingsley Inn, 1475 Woodward, Bloomfield Hills, Michigan, on December 17, 1967; and, further, the aforesaid testimony of Peter N. Lazaros as he then and there well knew and believed, was not true in that the aforementioned individuals were not present at the Kingsley Inn, 1475 Woodward, Bloomfield Hills, Michigan, on December 17, 1967.

## COUNT TWO

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. What about Mr. Gardner, did you or did you not give an envelope containing $1,000 at this Christmas party to Mr. Gardner?

A. Yes.

Q. You did?

A. Yes."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

## COUNT THREE

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. Are you positive you gave an envelope containing $1,000 at the Christmas party in 1967 to Ellis Lockwood?

A. Yes, sir."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

## COUNT FOUR

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. Now, Mr. Lazaros, let's go back to James Lee. Did you give James Lee an envelope with $1,000 or didn't you, at the Christmas party in December, 1967?

A. Yes, I did."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

## COUNT FIVE

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. But all of these Internal Revenue Service employees—and I mean Getto, Lockwood, Lee and Gardner— were at the party in each other's presence, is that correct?

A. Yes."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

## COUNT SIX

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count

One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. Well, Getto, Lockwood, Lee and Gardner were there for a long time, is that correct?

A. I say yes.

Q. From the start of the party to about the end of the party, is that correct?

A. That is correct."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

### COUNT SEVEN

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. Are you positive that either you or Joe Barbara in your presence gave an envelope to Mayor Cavanagh at that same party, at the Kingsley Inn in December 1967, containing $3,000?

A. Yes, sir."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

### COUNT EIGHT

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count One, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. What about Art Stone, did you give Art Stone an envelope which contained $500?

A. As I said, I give him money, but I don't know if it was in an envelope. Today I can't remember if it was in an envelope.

Q. Did you give him $500?

A. Yes."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count One, which is hereby incorporated by reference.

### COUNT NINE

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. It was material to this Grand Jury investigation to determine whether one Anthony Getto, also known as Tony Getto, an Internal Revenue Service employee, Vernon Conrad, an Internal Revenue Service employee, and James Dunleavy, a Detroit Police Department officer, attended a boxing match between Joey Giardello and Rocky Rivaro in Cleveland, Ohio, in the Spring of 1964, at which time and place Peter N. Lazaros was also present; further, it was material to this Grand Jury investigation to determine whether the aforementioned individuals, at or about the time the aforementioned individuals attended the aforesaid boxing match, received money or a thing of value at the Sahara Motor Hotel, 3201 Euclid Avenue, Cleveland, Ohio, at which time and place Peter N. Lazaros was also present.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. (Interposing) Wait a minute, Mr. Lazaros, did you go to both Joey Giardello-Rocky Rivaro fights or one fight?

A. I don't remember, Mr. O'Leary.

Q. Well, did Anthony Getto go to both fights or one fight?

A. He was in one of them."

5. The aforesaid testimony of Peter N. Lazaros, as he then and there well knew and believed, was not true in that Anthony Getto, also known as Tony Getto, an Internal Revenue Service employee, Vernon Conrad, an Internal Revenue Service employee, and James Dunleavy, a Detroit Police officer, did not receive any money or thing of value at the Sahara Motor Motel, 3201 Euclid Avenue, Cleveland, Ohio, in the Spring of 1964; further, the aforesaid testimony of Peter N. Lazaros, as he then and there well knew and believed, was not true in that the aforementioned were not present at a boxing match between Joey Giardello and Rocky Rivaro in Cleveland, Ohio, in the Spring of 1964.

## COUNT TEN

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count Nine, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. Do you know Inspector James Dunleavy, formerly of the Detroit Police Department?

A. Very well.

Q. Was Inspector Dunleavy at that fight?

A. Yes, he was."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count Nine, which is hereby incorporated by reference.

## COUNT ELEVEN

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count Nine, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. You came back from the fight on Saturday; the fight was on Friday night, isn't that correct?

A. I don't remember if it was on Friday, but if you say it was—I don't know the dates there. I stayed—we stayed one day over, yes.

Q. Did Mr. Getto also stay one day over?

A. Yes."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count Nine, which is hereby incorporated by reference.

## COUNT TWELVE

The Grand Jury further charges:

1. The Grand Jury re-alleges all of the allegations of Paragraph 1 of Count One, which is hereby incorporated by reference.

2. The Grand Jury re-alleges all of the allegations of Paragraph 2 of Count One, which is hereby incorporated by reference.

3. The Grand Jury re-alleges all of the allegations of Paragraph 3 of Count Nine, which is hereby incorporated by reference.

4. At the time and place alleged in Paragraph 1 herein, Peter N. Lazaros appeared as a witness before the Grand Jury, and then and there, being under oath, testified falsely before the Grand Jury with respect to the aforesaid material as follows:

"Q. You say the money go from— or you saw the money go to Vernon Conrad and Tony Getto and Inspector Dunleavy?

A. Yes.

Q. Is that correct?

A. Yes.

Q. And this was in a room at the Sahara Motel, is that correct?

A. Yes, I can describe you the room if you want me to.

Q. Was this on the same night of the fight or was this on the following day?

A. I think it was on the following day."

5. The Grand Jury re-alleges all of the allegations of Paragraph 5 of Count Nine, which is hereby incorporated by reference.

This is a True Bill.
*Charles L. Easton*
Foreman