**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael James OLSOWY, Defendant-Appellant.**

**No. 86–5316.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided June 15, 1987.

---

Charles D. Weisselberg, San Diego, Cal., for defendant-appellant.

Larry A. Burns, Asst. U.S. Atty., on the brief, Peter K. Nunez, U.S. Atty., Patrick K. O'Toole, Asst. U.S. Atty., argued, San Diego, Cal., for plaintiff-appellee.

Before SNEED, KOZINSKI and THOMPSON, Circuit Judges.

KOZINSKI, Circuit Judge:

Olsowy appeals his conviction on one count of submitting a false claim to the government in violation of 18 U.S.C. § 287 (1982), and three counts of making false statements to a government agency in violation of 18 U.S.C. § 1001 (1982).

### Facts

In April 1984, the United States Department of Treasury mailed Olsowy a Social Security check in the amount of $581.39. The check was endorsed and cashed. In September 1985, Olsowy submitted a form to Treasury claiming he had never received

the check. His claim was reviewed by a Treasury examiner in Washington, D.C., who referred the claim and a photocopy of the original check with endorsement to a handwriting analyst. The handwriting analyst requested additional handwriting samples from Olsowy, but was unable to make a conclusive determination as to the validity of the claim. Eventually, the Treasury Department Claims Adjudication Branch referred Olsowy's claim to the United States Secret Service field office in San Diego for further investigation.

On February 7, 1986, a Secret Service agent interviewed Olsowy in San Diego and showed him copies of the claim form and check. After giving Olsowy an opportunity to review the documents, the agent asked him whether he had received the check. Olsowy denied receiving the check and offered information concerning others who might have cashed it. Olsowy provided the agent with additional handwriting samples and left, telling the agent that he would be willing to return if there were any problems.

On February 21, 1986, the same Secret Service agent again interviewed Olsowy. This time, the agent advised Olsowy of his *Miranda* rights prior to the interview. Olsowy voluntarily waived his rights and agreed to speak with the agent, who told him that he now believed that Olsowy had in fact endorsed the check and he had then filed a fraudulent claim. Olsowy again denied that he had ever seen or handled the check, and agreed to provide the agent with further handwriting samples and fingerprints. The agent then had Olsowy sign a typewritten summary of his statement denying that he had received, possessed or negotiated the check.

Several months later, in May 1986, Olsowy was arrested. Count one of the indictment charged Olsowy with knowingly presenting a false claim to the government in violation of 18 U.S.C. § 287. Counts two and three charged him with violating 18 U.S.C. § 1001 based on his false oral statements made to the Secret Service agent on February 7, 1986, and February 21, 1986. Count four charged a violation of section

1001 based on the document Olsowy had signed on February 21, 1986. Olsowy was found guilty by a jury on all four counts and was sentenced to five years' probation on count one and 90 days' custody on counts two, three and four.

Olsowy raises three issues on appeal. First, he argues that section 1001 does not cover the statements forming the basis of counts two through four because they were in response to an investigation of Olsowy conducted by the Secret Service agent. Second, he contends that the section 1001 counts are multiplicitous with the section 287 count, and that the three section 1001 counts are mutually multiplicitous. Finally, Olsowy contends that the trial court abused its discretion in excluding evidence of his mental disability and of the Social Security Administration's conflicting records.

### Discussion

#### A. The "Exculpatory No" Defense

■ Section 1001 prohibits, inter alia, "any false, fictitious or fraudulent statements" knowingly made with respect to any matter "within the jurisdiction of any department or agency of the United States." While conceding that his statements to the Secret Service agents were false, Olsowy contends that they fall within the so-called "exculpatory no" exception to section 1001. We recently recognized this exception in *United States v. Medina de Perez*, 799 F.2d 540 (9th Cir.1986). The exception allows a suspect who is in custody to deny involvement in the crime for which he was arrested without incurring additional criminal penalties. However, the exception is of necessity limited and does not apply in every case where a question is asked by a government official during the course of an investigation. *See United States v. Rodgers*, 466 U.S. 475, 477, 104 S.Ct. 1942, 1945, 80 L.Ed.2d 492 (1984) ("[t]he statutory language [of section 1001] clearly encompasses criminal investigations conducted by the FBI and the Secret Service").

■ As the court repeatedly noted in *Perez*, the "exculpatory no" exception ap-

plies during the course of "post-arrest interrogation." 799 F.2d at 542.[1] Here Olsowy was not in custody during his interviews with the Secret Service agent and therefore does not come within the sweep of the "exculpatory no" defense. In addition, he does not meet the other prerequisites for invocation of the defense, as they were articulated in *Perez.* These are: "(1) the false statement must be unrelated to a claim to a privilege or a claim against the government; (2) the declarant must be responding to inquiries initiated by a federal agency or department; and (3) the false statement must not 'impair the basic functions entrusted by law' to that agency." 799 F.2d at 544 n. 5.

As to the first of these requirements, the statements made by Olsowy to the Secret Service agent did in fact relate to his claim against the government. The entire basis for Olsowy's contact with the Secret Service was his filing of a claim with the Treasury Department. The record discloses that it is routine practice for Treasury to refer claims to a local Secret Service office when it is unable to make a conclusive determination as to the validity of a claim.[2] Moreover, the substance of Olsowy's statements were plainly related to his claim. The agent asked Olsowy whether he had ever received or endorsed the Treasury check; he answered that he had not. This false assertion does not merely relate to his claim; it is his entire basis for it.

That Olsowy's false statements related to his claim against the government denies him the benefit of the "exculpatory no" defense. *See United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981); *see also Perez,* 799 F.2d at 544 n. 5. Where a declarant's false statements concern a claim he has submitted to the United States, it makes no difference whether the government agent's conduct is predominantly "administrative" or "investigative." [3] False statements made in support of claims submitted to the government are at the very heart of the evil section 1001 was drafted to combat,[4] and section 1001 reaches such statements whether they are made during the initial submission of a claim or during its subsequent investigation.

As to the second *Perez* requirement, it cannot be said that Olsowy was responding to inquiries initiated by the government. It was Olsowy who put in motion the events that led to the interviews with the Secret Service agent. He initiated the contact with the government by filing a claim with Treasury. *See Rodgers,* 466 U.S. at 476–77, 104 S.Ct. at 1944–45 (upholding conviction under section 1001 of defendant who contacted FBI and Secret Service and reported falsely that his wife had been kidnapped and that she was involved in a plot to kill the President). That Treasury chose to refer Olsowy's claim to the Secret Service, which has greater expertise and resources to consider its validity, does not change the fact that the investigation into the allegedly lost check was commenced at Olsowy's behest.

1. The *Perez* court stressed the custodial nature of the interrogation repeatedly throughout its opinion. *See* 799 F.2d at 540, 541 n. 1, 542, 545 & n. 8, 546 & n. 9, 547. Specifically, the court said that the exception reflects "our deeply ingrained beliefs regarding acceptable treatment of an accused in custody." *Id.* at 547.

2. At the time he was interviewed by the Secret Service agent, Olsowy's lost check claim was still pending and, if he had been able to satisfy the agent of its bona fides, the agent presumably would have certified to Treasury that Olsowy be paid. To be sure, the converse was also true: a determination that the claim was not bona fide could well result in criminal penalties, as they in fact did.

3. This result is implicit in our holding in *Perez* where we made clear that all three of the requirements discussed therein were necessary to invoke that exception. 799 F.2d at 544 n. 5. At any rate, this conclusion follows from *Rodgers* which involved a criminal investigation by the FBI and Secret Service. *See* 466 U.S. at 477, 104 S.Ct. at 1945.

4. As we have repeatedly noted, section 1001's predecessor statute was drafted principally to deal with a single indentifiable problem: attempts to swindle the government by submission of false claims for money. *Perez,* 799 F.2d at 542; *see United States v. Yermian,* 708 F.2d 365, 369 (9th Cir.1983), *rev'd on other grounds,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984).

Olsowy also fails to satisfy the third *Perez* requirement: his false statements plainly impaired the Treasury Department's basic function of determining whether he was entitled to a replacement check. In *Perez,* we held that "[i]n a post-arrest criminal investigative setting," false statements to a government investigator cannot be thought to "pervert the investigator's police function." 799 F.2d at 546. This rationale does not apply here, where the Secret Service agent was assisting Treasury in resolving the validity of Olsowy's claim; he was therefore not acting "in a purely 'police' capacity." *United States v. Bush,* 503 F.2d 813, 815 (5th Cir.1974), *quoted with approval in Perez,* 799 F.2d at 544. The agent was acting, at least in part, as an administrator, helping Treasury dispose of Olsowy's claim. *See Perez,* 799 F.2d 545. Olsowy's false statements impaired that function.

### B. *Multiplicity*

■ Olsowy makes two separate arguments that the charges against him are multiplicitous. First, he claims that the three counts of violating section 1001 are multiplicitous with count one, which charges a violation of 18 U.S.C. § 287 (making a false claim upon the United States). Olsowy argues that Congress did not intend section 1001 to provide cumulative punishment for conduct already covered by a more specific section of the criminal code like section 287. This argument is beside the point. Olsowy's section 287 conviction and his section 1001 convictions are not multiplicitous because they cover different facts and circumstances. *Compare United States v. Duncan,* 693 F.2d 971, 975 (9th Cir.1982) ("[t]here is no reason that [a defendant] cannot be charged and convicted under 18 U.S.C. § 1001 simply because another statute is also applicable"), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *with United States v. Rose,* 570 F.2d 1358, 1363 (9th

Cir.1978) (convictions under both 18 U.S.C. § 542 and 18 U.S.C. § 1001 redundant where based on exactly the same utterances).

Olsowy was charged and convicted of two separate wrongs: his submission of a false claim to the Treasury in September 1985, and his false statements made to the Secret Service some five months later. The only thing the two have in common is that they concern the same general subject matter: whether Olsowy had received and endorsed the check. Otherwise, the convictions stand quite independent of each other. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932).

■ Olsowy raises more serious concerns by arguing that counts two, three and four are multiplicitous because they allege that he made precisely the same denials in response to the same questions posed to him by the Secret Service agent. He argues that the government should not be able to pile on multiple convictions by repeatedly asking the same question to a criminal suspect.

While we have not previously addressed this issue,[5] in *Gebhard v. United States,* 422 F.2d 281 (9th Cir.1970), we considered a very similar contention in the context of multiple perjury convictions for repeating the same lie to a grand jury in response to the same question. *Gebhard* reasoned that there was no chance the grand jury could be hindered in its investigation by each repetition of the false utterance. Therefore, we held that the government should not be able to obtain multiple perjury convictions. *Id.* at 289–90.

We hold our reasoning in *Gebhard* applicable here. Olsowy made exactly the same oral denial to the same Secret Service agent twice and then signed a document embodying the very same denial. The repetition of Olsowy's initial false statement did not further impair the operations of the

---

5. We have previously upheld multiple counts under section 1001 for submitting separate documents at the same time, *United States v. UCO Oil Co.,* 546 F.2d 833, 838–39 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d

357 (1977) and multiple convictions for submitting subsequent documents summarizing earlier documents. *United States v. Bennett,* 702 F.2d 833, 835 (9th Cir.1983).

government. Once he misled the agent, repeating the lie adds little or nothing to the harm caused to the Secret Service's inquiry. Therefore, we hold that where identical false statements, in either oral or written form, are made in response to identical questions, the declarant may be convicted only once.

### C. *Evidentiary Challenges*

■ Finally, Olsowy argues that the district court improperly excluded evidence that his eligibility for social security was based on a mental disability and that he had received overpayments from the Social Security Administration, all tending to show his honest confusion as to the state of his account. A trial court's evidentiary rulings will not be disturbed on appeal absent a showing of abuse of discretion. *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.), *cert. denied,* 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).

The district court gave Olsowy ample leeway in attempting to prove he was confused and made an honest mistake. It allowed testimony from defense witnesses that Olsowy had made several inquiries with the Social Security Administration regarding his account and that he seemed genuinely confused about the account's status. Olsowy was also allowed to testify that he had received numerous overpayments from the Social Security Administration. The district judge's decision not to admit the proffered additional evidence was not an abuse of discretion.

### Conclusion

We affirm as to counts one and two and reverse as to counts three and four.