**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dirk MAYBERRY,
Defendant–Appellant.**

No. 88–3191.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1989.

Decided Sept. 4, 1990.

Terrence Kellogg, Seattle, Wash., for defendant-appellant.

Harry J. McCarthy, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before CANBY, WIGGINS and FERNANDEZ, Circuit Judges.

CANBY, Circuit Judge:

Following a bench trial, Mayberry was convicted on one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and on nineteen counts of causing false material statements to be made in a matter under the jurisdiction of an agency of the United States, in violation of 18 U.S.C. §§ 1001 and 1002. Mayberry appeals on the grounds of insufficiency of evidence and multiplicity of counts. We affirm in part, reverse in part, and remand for resentencing.

I

Dirk Martin Mayberry, a real estate broker, arranged nine separate transactions in which his clients purchased property by means of federally insured mortgages. In order to qualify for assistance, Mayberry's clients filed applications and supporting documents with the Department of Housing and Urban Development ("HUD"). Much of the information provided to HUD was either false or misleading. For example, actual down payments made by some purchasers were considerably smaller than was represented to HUD; money said to have been paid in settlement costs had in fact never changed hands; and cash assets reported by purchasers included substantial sums that Mayberry deposited into the purchasers' accounts for very brief periods. Operating on the information supplied by the purchasers, HUD approved the applications and insured the mortgage financing. When the transactions closed, Mayberry earned commissions and other fees. Subsequently, several purchasers defaulted on their mortgage payments; foreclosure followed, and HUD assumed repayment of the loans.

A grand jury indictment alleged that information provided to HUD by the mortgagors was false, thereby rendering the applications fraudulent, and charged Mayberry with actively encouraging and participating in the fraud. The district court convicted Mayberry on all counts relating to seven of the nine transactions, and acquitted him on those relating to the other two.

II

Mayberry contends that the evidence introduced at trial was insufficient to establish that the statements at issue were false and material and that he aided and abetted

purchasers in making or using such statements.[1] On this appeal, we must determine "whether a reasonable [trier of fact], after viewing the evidence in the light most favorable to the government, could have found [Mayberry] guilty beyond a reasonable doubt of each essential element of the crime[s] charged." *United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989); *see also United States v. Spears,* 631 F.2d 114, 117 (9th Cir.1980) (noting that appellate inquiry is the same for bench and jury trials). Our inquiry must also show deference to the trial court's assessments of witness credibility. *See United States v. Hodges,* 770 F.2d 1475, 1478 (9th Cir.1985) (describing determinations of credibility as "generally immune from appellate review"). Having reviewed the record below with these standards in mind, we reverse the convictions on four counts and affirm the remainder.

## A. *Falsity.*

■ Allegedly false statements made in connection with purchases by Christine Meling and Lee Johnson served as the basis for seven counts on which Mayberry was convicted. The evidence adduced at trial was sufficient to establish that some of these statements were false, and insufficient to establish that others were false.

Meling stated on her Mortgagor's Certificate that she had paid all charges listed in the Settlement Statement from her own funds; the Settlement Statement represented that she had paid $2600.[2] Meling testified that in fact she had paid a total of $1600 at closing. This testimony, uncontroverted by Mayberry or any other witness, was sufficient to establish the falsity of the Mortgagor's Certificate.

Meling also stated on her HUD application that she had $5700 in cash assets.[3] At trial, she testified that her assets were in truth far less; she explained that Mayberry had deposited $5000 into her savings account for a 24–hour period—just long enough to affect the amount shown on a verification form filed by her bank. Mayberry asserted at trial that the $5000 represented money Meling had invested with him. Although Meling admitted that the funds "could" have been those she had earlier given to Mayberry, she also said that she knew she would return the $5000 to Mayberry immediately after the bank registered the deposit. Her testimony provided sufficient evidence of the falsity of the asset figure she listed. Clearly, she did not have cash assets of $5700, as shown on the HUD application. Even if Mayberry's "previous investment" explanation (about which the district court expressed some skepticism) is true, the fact remains that the $5000 Mayberry deposited in Meling's account did not represent a *cash* asset of Meling's. Neither Mayberry nor Meling had any expectation that Meling could have chosen to retain the $5000 after Mayberry deposited it.[4]

■ To support her application, Meling requested that her bank verify the amount of money in her account; the bank responded by sending a form stating that she had $5700.[5] We agree with Mayberry

---

1. Section 1001, the substantive provision under which Mayberry was charged, establishes criminal penalties for anyone who, in a matter within the jurisdiction of a federal agency, "falsifies, conceals or covers up" a material fact, "makes any false, fictitious or fraudulent statements," or "makes or uses any false writing." 18 U.S.C. § 1001. As one who allegedly aided and abetted the commission of a federal crime, Mayberry was chargeable as a principal. *See* 18 U.S.C. § 2.

2. The Mortgagor's Certificate statement was the basis for Count XII.

3. This statement was the basis for Count XIII.

4. If, indeed, Meling had a $5000 investment with Mayberry, she could have listed it under a heading other than "cash"; the HUD form contains several sections in which the applicant may indicate non-cash assets.

5. This statement was the basis for Count XIV. Counts IV and VII concerned the statement of another purchaser's balance on the same verification form. Although Mayberry has challenged only Count XIV on this appeal, we review the other two similar counts under our authority to take note of plain errors even when not brought to our attention by the parties. *See Herzog v. United States,* 235 F.2d 664, 666 (9th Cir.) (*en banc*) (noting that Rule 52(b) of the

that the government failed to establish that this form "falsely represented that the checking account of Christine Meling ... contained money *belonging to Christine Meling* in the amount of ... ($5,557.91)," as alleged in the indictment. The document in question contained no representation at all concerning the ownership of the money; it simply indicated the balance in Meling's account. At trial, there was no evidence whatsoever to suggest that the balance was not precisely what the bank reported on the verification form.[6] Thus, the essential element of falsity could not have been proved, and the conviction on this count must be reversed.[7]

Johnson purchased two properties, one on 55th Avenue and one on Garden Street, in a "package deal." He filed HUD documents stating that he had paid approximately $4500 as a down payment for the 55th Avenue house, and that he covered all settlement charges and fees out of his own funds.[8] At trial, however, Johnson testified that he paid a cash total of $3000 at settlement for both properties. Mayberry,

who was the seller of the 55th Avenue property, claimed that he had owed Johnson money from a previous real estate deal, and considered Johnson's corresponding "credit" to be part of the charges and fees paid at settlement. Whether in fact the satisfaction of Mayberry's previous debt accounted for a portion of Johnson's deposit is a close question. Although both Mayberry and Johnson testified that such an arrangement existed,[9] other evidence tended to disprove their story. For example, on his HUD application, Johnson neither disclosed the debt as an asset nor explained how it accounted for precisely the sum necessary for the down payment. In addition, Johnson did not mention this aspect of the transaction to investigators or to the grand jury, and was less than entirely forthcoming about it even during his trial testimony. These circumstances led the district court to doubt the credibility of Johnson's and Mayberry's testimony. In light of the conflicting evidence and our general deference to the trial court's assessment of credibility, we affirm the judg-

---

Federal Rules of Criminal Procedure grants appellate courts authority to notice error on their own motions), *cert. denied,* 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956); *see also, United States v. Rico,* 895 F.2d 602, 603 (9th Cir.1990) (considering *sua sponte* whether special assessment against defendant was error). *Cf.* Sup. Ct.R. 27.

**6.** In contrast, Meling's HUD application, discussed above, p. 721, in which she represented that she had $5700 in cash assets, expressly called for her to set forth the "Personal and Financial Status *of Applicant."* In listing assets and liabilities under that heading, Meling necessarily represented that the listed cash asset was in fact hers, which was not true.

Other clients of Mayberry similarly asserted in other documents that money listed in bank accounts represented *their own* assets, and those false assertions were the basis of other counts on which Mayberry was convicted.

**7.** As this circuit and others have recognized, § 1001 includes two distinct offenses, concealment and false representation, and these require different elements of proof. *See United States v. UCO Oil Co.,* 546 F.2d 833, 835 n. 2 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Anzalone,* 766 F.2d 676, 682–83 (1st Cir.1985); *United States v. Diogo,* 320 F.2d 898, 902 (2d

Cir.1963); *United States v. Tobon–Builes,* 706 F.2d 1092, 1096–97 (11th Cir.1983). Because the government charged that use of the verification forms was an offense of the latter type, it bore the burden of proving that the statement of the account balance was false. We express no opinion on whether the convictions would have survived had the government charged that use of the verification forms constituted concealment under § 1001.

**8.** These statements were the basis for Counts XV, XVI and XVII.

**9.** During both Johnson's testimony and closing arguments, the district judge repeatedly commented that Johnson's only testimony on the matter was that he paid $3000. The transcript, however, clearly shows that Johnson's testimony was, at the least, more nuanced and more comprehensive than the judge described. First, whenever Johnson mentioned the $3000 figure, he carefully specified that this was *cash* paid at settlement. Second, he conceded that Mayberry had owed him money from a previous real estate deal and had agreed to repay it by arranging for him to purchase another property without having to make a down payment. Third, after a second's hesitation over semantics, Johnson agreed that his "credit" from Mayberry was part of the total deposit he paid.

ment on these counts.[10]

■ Johnson also filed a HUD Settlement Statement on which he claimed to have paid $2273 as a deposit for the Garden Street property.[11] The only trial evidence relevant to this claim was the testimony by Johnson and Mayberry that Johnson paid $3000 in cash for both the 55th Avenue and Garden Street houses. While that evidence may have supported a finding that Johnson did not actually pay the reported $4500 deposit on the 55th Avenue property, it does not support the finding that he did not pay the reported $2273 on Garden Street. The cash paid was more than sufficient to cover the Garden Street deposit. Because there was no evidence that Johnson did not pay that particular deposit, the statement at issue could not have been proven false, and the conviction on this count must be reversed.

■ Finally, Johnson stated on his HUD application that he intended to reside at the Garden Street house.[12] Although both Johnson and Mayberry testified at trial that Johnson initially intended to occupy the property and later changed his mind, Johnson had told the grand jury that he never intended to occupy it. Acknowledging this inconsistency, and allowing for the trial court's determination of credibility, we conclude that the record provides sufficient evidence that the statement of intent was in fact false.

### B. *Materiality.*

■ Mayberry contends also that the government did not introduce sufficient evidence that false representations about assets, down payments, settlement fees and intentions to occupy were material.[13] He argues that HUD's decision to approve the

mortgage applications would not have been different had the purchasers described the financial circumstances more accurately. Speculation about how HUD might have responded to truthful information, however, is irrelevant; that HUD may not have relied upon the statements does not undermine their materiality under § 1001. *See United States v. Facchini,* 874 F.2d 638, 643 (9th Cir.1989) *(en banc).*

To satisfy the materiality requirement, all the government needed to show was that the false statements had the propensity or capacity to influence or affect HUD's decision. *See id.* The unchallenged testimony of Glen Grove, a HUD administrator, established that capacity. Grove explained at trial that the agency considered the information at issue to be highly significant in reviewing mortgage insurance applications. According to his testimony, the amount of available assets indicates a purchaser's ability to cover the deposit and closing fees and to keep up with future mortgage payments; further, the requirement that the purchaser cover the settlement costs ensures that he has some incentive for repaying the mortgage loan; and occupancy plans determine whether HUD classifies the loan as one for a primary residence or an investment property. Viewing this evidence in the light most favorable to the government, as we must, we conclude that it was sufficient to establish that the statements at issue were material.

### C. *Aiding and abetting.*

■ Finally, Mayberry contends that there was insufficient evidence that he aided and abetted purchasers Richard Donaldson and Vernon Johnson in making false statements.[14] He urges that there was no

---

**10.** Because we uphold the district court's finding on credibility, we do not reach the issue of whether the statements made to HUD would constitute a § 1001 violation even if Mayberry had proved that Johnson paid the deposit by means of his "credit" from the previous debt.

**11.** This statement was the basis for Count XVII.

**12.** This statement was the basis for Count XIX.

**13.** The relevant counts are II, III, V, VI, VIII, IX, X, XI, XII, XIII, XV, XVI, XVII, XIX and XX. Counts IV, VII and XIV also required materiality, but we do not consider them here because we have reversed the convictions on those counts for other deficiencies. *See* section II.A. *supra.*

**14.** The relevant Counts are II, III, V, VI, VIII, IX, X and XI. Again, we do not here consider Count IV because we have invalidated it on other grounds. *See* section II.A. *supra.*

nexus between anything he did and the representations that Donaldson and Johnson chose to make. Testimony by those two purchasers, however, directly undercuts Mayberry's position, and was sufficient to sustain the aiding and abetting element.

Donaldson testified that Mayberry initiated the purchase transaction, and devised the plan to inflate Donaldson's bank account so that Donaldson could qualify for a HUD loan. According to Donaldson, Mayberry prepared the documentation and even took a deposit slip from Donaldson so that he could put $5000 into Donaldson's account for the purpose of affecting the balance shown on the verification form. Johnson testified to having much the same experience with Mayberry in connection with his HUD-assisted purchase.

Against this testimony, Mayberry argues that Donaldson and Johnson were not credible witnesses. He points out two relatively minor inconsistencies between Johnson's story to investigators and his testimony at trial, and suggests that Donaldson's recent felony conviction and his immunity from prosecution in the HUD matter may have led him to give biased testimony against Mayberry. The credibility of Donaldson and Johnson, however, was for the district court to assess; in the absence of highly persuasive evidence tending to undermine that assessment, we shall not disturb it.

### III

Mayberry's final objection is that the indictment on which he was convicted charged the same false statement in multiple counts; he urges that our recent decision in *United States v. Olsowy*, 836 F.2d 439 (9th Cir.1987), *cert. denied*, 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988), requires reversal. Having reviewed the issue *de novo, see United States v. Salas–Camacho*, 859 F.2d 788 (9th Cir.1988), we conclude that reversal for multiplicity is not warranted.

In order to prevail on this point, Mayberry would need to show at a minimum that

two or more counts involved "identical false statements ... made in response to identical questions." *Olsowy*, 836 F.2d at 443 (9th Cir.1987); *see also Salas–Camacho*, 859 F.2d 788, 791 (9th Cir.1988). Two counts, VII and VIII, centered upon the same information, and are at least plausible candidates for *Olsowy* reversal. Because of other deficiencies, however, we have reversed Mayberry's conviction on Count VII; [15] we therefore do not consider whether it may also be improperly multiplicitous with Count VIII. Among the remainder of the nineteen counts on which Mayberry was convicted, no two concern the same statement.

### IV

We reverse Mayberry's conviction on Counts IV, VII, XIV and XVIII because there was no evidence that the statements at issue in those counts were false; we affirm the conviction on all other counts. We vacate Mayberry's sentence, and remand the case to the district court for resentencing.

AFFIRMED IN PART, AND REVERSED IN PART; SENTENCE VACATED AND CASE REMANDED.

---

15. *See* section II.A. *supra.*