**UNITED STATES of America, Appellee,**

v.

**Carrie TRENT, Appellant.**

**No. 90–3045.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 26, 1991.

Decided Nov. 25, 1991.

Patricia A. Wessel, St. Louis, Mo., argued, for appellant.

Steven A. Muchnick, St. Louis, Mo., argued (Steven B. Higgins, U.S. Atty., on the brief), for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Carrie Trent was found guilty by a jury of having embezzled funds belonging to the United Missouri Bank of Ferguson, Mis-

souri, and of having made false statements to agents of the Federal Bureau of Investigation. She was sentenced to twenty-one months' imprisonment on each count, the sentences to run concurrently.

Shortly after 10:00 a.m. on December 3, 1988, Trent left her teller station at the bank and led a coworker into another part of the teller area, where Trent fell to the floor and started screaming and crying hysterically. After being taken to the bank's conference room, Trent regained her composure sufficiently to be able to tell a bank officer and several local police officers that she had been robbed. Later that morning, Ralph Tucker, a special agent with the Federal Bureau of Investigation, arrived at the bank and interviewed Trent. At the outset of the interview, Trent appeared to be upset and was crying. She told Tucker the details of the alleged robbery and gave a physical description of the person who had robbed her. FBI agent Teresa Meehan was present during a portion of Tucker's interview and obtained from Trent a description of the gun that was used during the alleged robbery.

On December 5, 1988, Trent was interviewed by agent Meehan and agent Thomas Ravenelle at the FBI office in St. Louis. During this interview Trent was calm and smiling. She related to these two agents essentially the same version of the robbery and the description of the robber that she had given to agent Tucker two days earlier.

Following further investigation, it was determined that in fact no robbery had occurred and that Trent's teller station was short of cash in the amount of $27,400.25. On October 18, 1989, Trent was indicted on one count of embezzling money from a federally insured, national bank in violation of 18 U.S.C. § 656, and on two counts of making false statements in a matter within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1001.

Trent's first contention on appeal is that the instructions given to the jury by the district court constituted an impermissible constructive amendment of the indictment. Because Trent failed to object to the in-

structions at trial (we note here that Trent's present counsel did not represent Trent at trial), we may review the alleged deficiencies in the instructions only for plain error. *See, e.g., United States v. Neumann,* 867 F.2d 1102, 1103 (8th Cir. 1989). Having reviewed the challenged instructions, we find no error, much less plain error.

Section 1001 of Title 18 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

As we pointed out in *United States v. Cowden,* 677 F.2d 417, 419 (8th Cir.1982), there need be no proof that the agency actually relied on the false statement: "The test of materiality involves only the *capability* of the statement to influence the agency's operations." (Emphasis in original.)

■ Trent contends that because she was voluntarily cooperating with the FBI agents in their criminal investigation, she should not have been charged under section 1001. This contention is without merit. *See United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984).

■ Trent argues that she should not have been charged with two separate violations of section 1001 since the statements that she made to agents Meehan and Ravenelle on December 5, 1988, were essentially the same as those that she had made to agent Tucker two days earlier. In support of this contention, she cites *United States v. Olsowy,* 836 F.2d 439 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988), in which the Ninth Circuit held that multiple convictions under section 1001 may not be based upon the

**1000**

same false statement made to the same Secret Service agent. In *United States v. Salas–Camacho*, 859 F.2d 788 (9th Cir. 1988), the Ninth Circuit distinguished *Olsowy* by holding that identical false statements made to different government agents could each be prosecuted under section 1001 if the second statement constituted an additional impairment of the operations of the government. In *Salas–Camacho*, the second statement was made to a secondary customs inspector whose duties were different from the primary customs inspector to whom the false statement was initially made: "Thus, appellant's second statement to the secondary customs inspector constituted an additional impairment of the latter's governmental functions." 859 F.2d at 791.

We conclude that the rationale of *Olsowy* is applicable in this case. As indicated above, agent Meehan was present during a portion of the interview conducted by agent Tucker on December 3. The answers given by Trent on December 5 were almost identical to the answers that she had given to Tucker only two days previously. The government argues that because Trent had adopted the posture of being extremely emotional during the December 3 interview and then adopted the pose of the calm, helpful witness during the December 5 interview, the answers that she gave during the latter interview constituted an additional impairment of the agents' governmental functions. We do not find this argument persuasive. The duties of Meehan and Ravenelle were not shown to be different from Tucker's. Once Trent misled agent Tucker by claiming that she had been robbed, her repetition of the false statements two days later to agents Meehan and Ravenelle added nothing to the harm caused to the FBI's inquiry. *Olsowy*, 836 F.2d at 443. Accordingly, we view the charge based upon the December 5 interview as constituting an impermissible piling on of multiple convictions.

The judgment of conviction entered on Counts I and II of the indictment is af-

firmed; the conviction on Count III of the indictment is reversed.