**UNITED STATES of America,
Appellee,**

v.

**Shitian WU, Defendant–Appellant.**

**Docket No. 03–1503.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 29, 2004.

Decided: Aug. 18, 2005.

---

Darrell B. Fields, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, New York, for Defendant–Appellant.

Glen G. McGorty, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, on the brief, Amy K. Orange

and Celeste L. Koeleveld, Assistant United States Attorneys, of counsel), New York, New York, for Appellee.

Before: McLAUGHLIN, POOLER, and WESLEY, Circuit Judges.

Judge POOLER concurs in part and dissents in part in a separate opinion.

WESLEY, Circuit Judge.

## Background

Sometime prior to December 1995, defendant Shitian Wu, an alien, obtained the birth certificate of Havelock Woo, a U.S.-born citizen who died in 1988. Defendant changed his name to Havelock Woo and petitioned to have various family members admitted to the United States under Woo's name. Specifically, he filed a Petition for Alien Relative[1] in which he stated, *inter alia*, Havelock Woo's place and date of birth as his own. After extended processing of the petition, Wu was required to submit an Affidavit of Support describing his financial status. The purpose of this affidavit was to assure immigration officials of Wu's ability to provide financial support for the relatives on whose behalf he petitioned. Defendant assumed the identity of Woo throughout this process which enabled him to petition as a U.S. citizen, thus allowing the potential for immigration of family members other than his wife and unmarried children.

Wu's trail of deceit is not nearly so limited, however. Wu became a lawful permanent resident in the United States only by convincing a friend who was a U.S. citizen to claim untruthfully that Wu was her adoptive father. Sometime thereafter, Wu obtained Havelock Woo's birth certificate and attempted to use it in an application for a U.S. passport as evidence that he was a U.S. citizen. The discrepancy in identity was discovered and the application denied. Only five months after this first attempt, Wu again applied for a U.S. passport using Woo's birth certificate and identity. He succeeded after convincing his insurance agent to file an affidavit in which she falsely claimed to be his niece. With his ill-gotten passport, Wu then sought to bring other family members to the United States, as noted above. After a number of failed attempts, he also used his passport to obtain a Social Security card under the identity of Havelock Woo. He then used that Social Security card to apply for Supplemental Security Income. It was only at this point that government officials uncovered Wu's extensive scheme of fraud and prosecuted him.

Wu was charged with three crimes involving his fraudulent activities. Although the Government missed the statute of limitations within which it could charge defendant for his false statements on the Petition for Alien Relative, a criminal charge for false statements on the Affidavit of Support was timely. In that regard, Wu was indicted under 18 U.S.C. § 1546(a) for "knowingly subscrib[ing] as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." Following a jury trial, Wu was convicted of this crime and two others not at issue here.[2] The materiality of defendant's false

1. A Petition for Alien Relative is the primary document necessary to the process of bringing an alien relative to the United States. *Cf. Drax v. Reno*, 338 F.3d 98, 114 (2d Cir.2003) (describing some aspects of petitioning process).

2. Defendant was convicted on three counts below, only the third of which is before us on appeal. Count One charged defendant with false procurement of citizenship and evidence of citizenship, in violation of 18 U.S.C. § 1425. Count Two charged defendant with

statements on the Affidavit of Support is the only substantial issue before the Court.

## Discussion

Defendant maintains that we should reverse his conviction under 18 U.S.C. § 1546(a) because his false statements are not material to the Affidavit of Support in which they were asserted. While he concedes the materiality of those same false statements when made in a Petition for Alien Relative, he argues that materiality as to the petition is irrelevant to this charge because the Government missed the statute of limitations on the petition itself. We disagree. While it is true that the falsehoods charged (date and place of birth) are not material to the affidavit in which they were asserted (an Affidavit of Support regarding Wu's finances), the financial affidavit is part of a larger application process aimed at bringing alien relatives into the United States and the statute is best understood as encompassing misrepresentations of material facts in that process no matter how many documents that may include. When assessed against this larger process, defendant's falsehoods—even as asserted in the Affidavit of Support—are clearly material.

■ Both the Government and Wu look to *Kungys v. United States* to define the proper focus of our inquiry. 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Under *Kungys*, a falsehood is material if it has a natural tendency to influence the decisions of the decision maker. *Id.* at 772, 108 S.Ct. 1537. As this Court has previously noted, both the Supreme Court and this Court employ the natural tendency standard in "numerous contexts" to assess the materiality of a statement. *Unit-*

*ed States v. An Antique Platter of Gold,* 184 F.3d 131, 136 (2d Cir.1999). While this principle remains clear and controlling, some uncertainty remains as to its appropriate application to the facts before us.

*Kungys* involved an action against Juozas *Kungys* in which the United States sought to revoke Kungys' citizenship. The statute in question, 8 U.S.C. § 1451(a), criminalized procurement of naturalization "by concealment of a material fact." *Id.* at 773, 108 S.Ct. 1537 (internal quotation marks omitted). In 1947, Kungys applied for and received a visa to enter the United States, and in that application falsely stated his date and place of birth. *Id.* at 772–73, 108 S.Ct. 1537. In 1954, Kungys made the same false statements in the course of his naturalization proceedings. *See id.* at 761, 767, 773, 108 S.Ct. 1537. The Third Circuit in *Kungys* conceded that as to each proceeding, the false statements that Kungys made would not have precluded him from succeeding on his application. *United States v. Kungys,* 793 F.2d 516, 526 (3rd Cir.1986). The Third Circuit nevertheless determined that the misstatements satisfied the statute's materiality requirement, reasoning that, "had [Kungys] told the truth at the time he applied for his citizenship, the discrepancies between the truth and his visa materials would have resulted in either a field investigation or an outright denial of the petition." *Id.* at 533.

The Supreme Court reversed, instructing that a materiality requirement is not met where a falsehood would only have impacted the decision because—had the falsehood been corrected the second time stated—the decision maker would have noticed a discrepancy, pursued it, and thus

making false statements in an application for a U.S. passport, in violation of 18 U.S.C. § 1542. Count Three charged defendant with making false statements in an immigration

document, in violation of 18 U.S.C. § 1546(a). Defendant was acquitted on a fourth count, charging witness tampering in violation of 18 U.S.C. § 1512(b).

influenced the decision made. *See* 485 U.S. at 775, 108 S.Ct. 1537. In *Kungys*, however, the Supreme Court clearly viewed the falsehood as "utterly immaterial *both* in the visa proceeding," which was not at issue in *Kungys*, *"and* in the naturalization proceeding," which was. *Id.* Thus, *Kungys* stands for the proposition that a falsehood—immaterial to both decisions in support of which it is asserted—cannot be made material "simply because it is repeated in both." *Id.*

■ *Kungys* does not inform us as to how to make a materiality determination where a falsehood is material to one, but not both, of the decisions in support of which it is asserted. We must then determine against which decision to assess the materiality of Wu's falsehoods to decide if the falsehood is merely an ancillary assertion or a criminal act. Do we assess the materiality of Wu's deception against the decision to admit alien relatives into the country or the decision that he had the financial ability to support those relatives once they arrived? His falsehoods were clearly relevant to the former, but not the latter when viewed separately.

The issue is one of scope—the breadth of decision against which the materiality of a falsehood is assessed. The statute under which Wu was charged, 18 U.S.C. § 1546(a), tells us *where* Wu's misrepresentation must have been asserted (immigration documents comprising his application), but not against *what* the materiality of Wu's falsehoods should be assessed. Defendant asks us to examine the falsehood's materiality only with regard to the document in which it is asserted. Were we to measure materiality at this end of this spectrum, we would deem a false assertion of date and place of birth immaterial if stated in an affidavit discussing financial status. Yet if that affidavit is part of a decisional process, the approval of which depended on citizenship as reflected in place of birth, the falsehood would clearly be material to the ultimate determination. Eligibility for relief required not only that Wu be native born, but also that he be financially able to assist his relatives upon their arrival in the United States. Those determinations were not separate or segmented as Wu and the dissent press.

We know of no case that has addressed the materiality of falsehoods in an Affidavit of Support in which the falsehoods, while not material to that Affidavit standing alone, are clearly material to the larger petition process. We can, however, find guidance from another materiality assessment made by this Court. *An Antique Platter of Gold* involved claims arising from false statements made on customs forms filed for the importation of a valuable gold platter. 184 F.3d at 133–34. In its discussion of the materiality of the falsehoods at issue, this Court touched on a hypothetical fact pattern in which a falsehood would be immaterial to a decision to allow importation of the platter but material to a decision as to the duties payable on importation. *See id.* at 136. Specifically, we noted that:

> under [appellant's proposed but rejected materiality] test, liability would not attach for misstatements in cases where truthful answers would still have enabled the goods to enter the United States. Importers have incentives to lie for reasons not related to achieving actual entry of the goods—*e.g.,* to reduce the duties payable .... The statutory purpose would thus be frustrated by the narrow reading suggested by appellant.
>
> We therefore hold that "a false statement is material ... if it has the potential significantly to affect the integrity or operation of the *importation process as a whole* ...."

*Id.* (quoting *United States v. Holmquist,* 36 F.3d 154, 159 (1st Cir.1994)) (emphasis added). The reasoning of the Court rings true here; the materiality of a falsehood should be assessed not against a preliminary or partial determination within a process, but instead against the "process as a whole."

■ In light of the statute's language and the decisional process at play in this case, we hold that the proper context in which to assess the materiality of a falsehood under 18 U.S.C. § 1546(a) is the entire immigration process directed at an ultimate result that defendant sought when asserting the falsehood. In our view, the proper inquiry should be as to whether a conclusion in Wu's favor on one issue would benefit him in the absence of a conclusion in his favor on the other. Would an immigration official's conclusion in petitioner's favor as to his financial ability to support his relatives benefit petitioner in the absence of a conclusion to admit those relatives to the United States?

Here, the answer is clearly "no." A decision by the Immigration and Naturalization Service ("INS")[3] that Wu had sufficient finances to support family members entering the United States would do him no good in the absence of a decision by the INS to admit those family members to the United States. Thus, it is quite clear that the documents Wu submitted had but one purpose. Wu engaged in a single process seeking a single outcome from the INS— to admit family members to the United States. That he is prosecuted for his false statement in his Affidavit of Support makes his falsehood no less material to the overall INS process and ultimate outcome that he sought.[4]

While our dissenting colleague expresses a number of concerns, we think it necessary to address but two. First, our dissenting colleague notes that had the government been more timely in prosecuting

**3.** Pursuant to the Homeland Security Act of 2002, Pub.L. 107–296 § 441, 116 Stat. 2135, 2193 (2002), 6 U.S.C. §§ 202(3), 251, on March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the Department of Homeland Security. United States Immigration and Customs Enforcement ("ICE"), a bureau within the Department of Homeland Security, now bears responsibility for enforcing the immigration laws. *See generally* I.C.E. Press Office, U.S. Dep't of Homeland Security, Fact Sheet, *Immigration and Customs Enforcement (ICE)* (Oct. 6, 2004), *available at* http://www.ice.gov/graphics/news/factsheets/index.htm. Because the documents in this case were submitted when the agency was still the INS, we refer to the INS in this opinion.

**4.** We hasten to warn, however, that two related but separate processes may be just that: separate. For example, *Kungys* describes a hypothetical factual scenario that, while offered there for a wholly different purpose, can be of use here. *See Kungys,* 485 U.S. at 773, 108 S.Ct. 1537. Assume that a person makes a misrepresentation in an application for enrollment in a free reading course and that the misrepresentation is material to the application. Further assume that the same person later makes the same misrepresentation in an application for naturalization, that the misrepresentation is not material to the application for naturalization, and that English literacy (as obtained in the free reading course) is a prerequisite to naturalization. Lastly, assume that this person is prosecuted under a statute which criminalizes material misrepresentations made in applications for naturalization but not in applications for free reading courses. The rule today announced in this case is not meant to support a conviction in this situation. The defendant should receive the benefit of the doubt, and as such the only fair inference in this hypothetical would be that the defendant actually sought the independent benefit of English literacy. That such literacy was also a prerequisite for naturalization is not sufficient to justify a finding of materiality of the misrepresentation to the naturalization application.

Wu, Wu could have been convicted separately for *both* statements. We do not necessarily agree for it may well be that the same lie repeated several times in different documents is but one crime. *Compare United States v. UCO Oil Co.,* 546 F.2d 833, 838–39 (9th Cir.1976), *and United States v. Kennedy,* 726 F.2d 546, 547–48 (9th Cir.1984), *with United States v. Olsowy,* 836 F.2d 439, 442–43 (9th Cir. 1988). Thus, it is quite possible that of those multiple lies, while all or any could be charged in a single count of an indictment, multiple counts based on each lie separately might be multiplicitous. *See United States v. Roshko,* 969 F.2d 9, 12–13 (2d Cir.1992). In discussing this very issue, this Court in *Roshko* quoted a Ninth Circuit opinion holding " 'that where identical false statements … are made in response to identical questions, *the declarant may be convicted only once.*' " *Id.* at 13 (quoting *Olsowy,* 836 F.2d at 443 (emphasis added)).

Nevertheless, while the same lie repeated several times may be but one crime, the government is not precluded from bringing a charge where the statute of limitations has run on one lie, but not another. Thus in *Roshko* we noted that "[w]hile *Olsowy* limits such a prosecution to a single charge, nothing in the case requires that the prosecution be limited to the first statement made." *Id.* Should this Circuit ever move from *Roshko* 's implicit endorsement of *Olsowy* to an explicit embrace thereof, the Government, under our view of this statute, might be prevented from bringing multiple charges for multiple statements of the same lie, such as those made here by Wu. In any event, the issue before us is whether Wu's later deception was material. We agree with our dissenting colleague that whatever the double jeopardy implications may be for others, they are not part of this case, nor need they be.

■■ Second, while our dissenting colleague believes that the rule of lenity should apply in this case, we cannot agree. "[T]he point of the rule of lenity is for statutes to serve as a fair warning … in language that the common world will understand." *United States v. Canales,* 91 F.3d 363, 368 (2d Cir.1996) (internal quotation marks omitted). We think that Wu should well have understood the criminality of his act giving rise to the charge here appealed. "The doctrine of lenity is 'one "of last resort," ' " *United States v. Venturella,* 391 F.3d 120, 133 (2d Cir.2004) (quoting *United States v. Dauray,* 215 F.3d 257, 264 (2d Cir.2000)), a resort we do not reach here because we do not find "a 'grievous ambiguity or uncertainty' in the statute before us, [n]or … can [we] make 'no more than a guess as to what Congress intended.' *United States v. Wells,* 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)," *Dauray,* 215 F.3d at 265 (Katzmann, J., dissenting) (parallel citation omitted).

Finally, we note that defendant contests his sentence on Sixth Amendment grounds. His brief was filed almost six months before *Booker* and *Fanfan* were decided. *See generally United States v. Booker,* — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). As his Sixth Amendment objection was not preserved at the district court, plain error analysis applies and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), provides the remedy.

### Conclusion

The district court's judgment of August 18, 2003, convicting defendant on Counts One, Two, and Three is hereby AFFIRMED, and we now REMAND pursuant to *Crosby,* 397 F.3d 103, for a determination of whether to resentence.

POOLER, Circuit Judge, concurring in part and dissenting in part.

I concur in that part of the majority opinion affirming appellant's convictions under 18 U.S.C. §§ 1425 and 1542. Appellant does not challenge those convictions, but rather, challenges only the imposition of a mandatory Guidelines sentence. Such imposition was erroneous in light of the Supreme Court's subsequent decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and, absent any other error, the appropriate course would be remand for consideration of whether to resentence under *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). As to the remaining conviction, the majority concludes that a defendant may be criminally convicted under 18 U.S.C. § 1546(a) for making a material false statement in an immigration document if the false statement had a natural tendency to influence the ultimate outcome of some process in connection with which the document was submitted, even if the statement is completely immaterial to the subject and purpose of the document itself. Because I find no support for such a broad reading of the materiality requirement in the statutory language, I would reverse that conviction and remand for resentencing under the two proper convictions. I therefore respectfully dissent in part.

The majority (1) correctly notes that the generally applicable test for whether a statement is material to some decision is the "natural tendency to influence" test of *Kungys v. United States*, 485 U.S. 759, 772, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), (2) correctly notes that the statute at issue is facially ambiguous regarding what decision it requires false statements to be material to, and (3) accurately frames the issue in this case as "one of scope-the breadth of decision against which the materiality of a falsehood is assessed." *Supra*. The majority relies on this Court's decision in *United States v. An Antique Platter of Gold*, 184 F.3d 131, 136 (2d Cir.1999), as resolving the inquiry in favor of holding that statements need only be material to, or have a natural tendency to influence, the "process as a whole" leading to the "ultimate result" to which they are addressed. *Supra*.

The majority notes, with regard to the instant statute, that it "tells us *where* Wu's misrepresentation must have been asserted . . ., but not against *what* the materiality of Wu's falsehoods should be assessed." *Supra*.[5] It is precisely this fact that distinguishes *Antique Platter of Gold*, for the statute there expressly provided just the guidance the majority finds lacking in the instant case. The statute construed in *Antique Platter of Gold* prohibited "false statement[s], written or verbal," "by means of [which]" the declarant "enters or introduces" "imported merchandise" "into the commerce of the United States." 184 F.3d at 135. The statute itself therefore focused on the effect of the statements on a particular specified decision-the decision whether to allow importation. In fact, Congress had not expressly included a ma-

---

**5.** The majority states incorrectly that the statute tells us that Wu's misrepresentation must have been asserted in "immigration documents *comprising his application*." *Supra* (emphasis added). Neither the statute nor the "immigration laws or regulations" to which it refers defines an "application" consisting of various "documents." Rather, the various documents that Wu submitted and that the government here characterizes as parts of the same "application" serve entirely distinct purposes, inform entirely distinct government decisions, and are required and regulated by distinct statutes and regulations. *See* 8 U.S.C. §§ 1154 (defining petitioning process), 1182(a)(4) (requiring affidavit of support), 1183a (same); 8 C.F.R. §§ 204.2 (governing petition for alien relative), 213a.2 (governing affidavit of support).

teriality requirement in that statute. Rather, this Court inferred from the requirement that the false statement be "the means" by which importation was secured that the statements must be material to the decision whether to allow importation.

By contrast, in the instant case, Congress specifically chose to narrow the range of false statements that it intended to criminalize by including a materiality requirement in addition to the requirements that the statement appear in a document required by immigration laws or regulations. *See United States v. Wells*, 519 U.S. 482, 489, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (treating materiality as separate element in addition to that of falsity). Congress in drafting 18 U.S.C. § 1546(a) did not, as it did in drafting the statute at issue in *Antique Platter of Gold*, direct courts to inquire into the "process as a whole" leading to a particular "ultimate decision." Rather, Congress provided only that the false statement must be "with respect to a material fact in any . . . document required by the immigration laws or regulations." Congress thus made no reference to a particular process or ultimate decision. It referred to material facts only in connection with the document in which they appear and the laws or regulations requiring the presentation of that document. Had Congress intended the broader reading that the majority imposes on this statute, *Antique Platter of Gold* demonstrates that Congress is perfectly capable of drafting it, and does not need the Court to read in the appropriate language.

Like *Antique Platter of Gold*, *Kungys* also involved a statute in which Congress included explicit language directing courts to evaluate materiality with reference to a specific, identified government decision. The statute in *Kungys* made it criminal to "procure[ ]" a "certificate of naturalization" "by concealment of a material fact . . . ."

485 U.S. at 764 n. 1, 108 S.Ct. 1537. Thus Congress directed the courts to determine materiality by inquiring into the tendency of the statement to affect the procurement of a certificate of naturalization, and the Supreme Court found that an alien's misrepresentation of his date and place of birth did not have such a tendency. Where Congress has provided expressly, as it did in the statutes at issue in *Kungys* and *Antique Platter of Gold*, that materiality is to be considered with respect to the ultimate outcome of some particular specified process, naturally courts have focused on that process as the object of the materiality inquiry. This is very different from the majority's approach, which is itself to posit the broadest possible relevant government process as the focus of the inquiry when Congress gave no indication of having contemplated focus on such a broad process and instead drafted a statute focused narrowly on documents, laws, and regulations.

Wu's false statements at issue here appeared in documents entitled "affidavit of support," INS Form I–864. The form itself describes its "purpose" as "to show that an intending immigrant has adequate means of financial support and is not likely to become a public charge," and informs the affiant that it is submitted "in consideration of the sponsored immigrant(s) not being found inadmissible to the United States" as public charges, "and to enable the sponsored immigrant(s) to overcome this ground of inadmissibility." While the affidavit of support is generally, as the majority states, submitted as "part of a larger application process aimed at bringing alien relatives into the United States," *supra*, the document itself and the statutes and regulations governing it make clear that it is directed to influencing an entirely distinct and self-contained inquiry into whether the alien is "inadmissible as a

public charge." *See* 8 U.S.C. §§ 1182(a)(4) & 1183a; 8 C.F.R. § 213a.2.

Because Congress has directed us to determine the materiality of the false statement in the context of the "document required by the immigration laws or regulations," and because those laws and regulations and the instant document itself all relate solely to the self-contained determination of whether the sponsored immigrant is inadmissible as a public charge, I conclude that Wu's false statements here were not material. Wu was not accused of making false statements about his finances, which would clearly be material. He was only accused of providing a false date and place of birth. This information had no "natural tendency to influence" the determination of whether he had sufficient financial resources to support his alien relatives, which is the relevant inquiry in determining whether the relatives were likely to become public charges and therefore inadmissible on that ground.

The majority's broad reading is especially problematic when one considers that this is a criminal case where we are construing a statute that the majority concedes is facially ambiguous as to what activity it defines as criminal, in the absence of any legislative history addressed to the ambiguity in question. In such a situation, lenity applies, and we are required to construe the ambiguity in favor of the criminal defendant. *Muscarello v.*

*United States,* 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). The particular circumstances of this case render the majority's reading doubly problematic. Wu was prosecuted for having repeated on affidavits of support false statements he previously made on petitions for alien relatives that were themselves not the subject of a prosecution solely because the statute of limitations on the earlier statements had expired by the time the Government filed charges. The majority's holding would seem to imply that, had the statute of limitations not expired, Wu could be convicted separately for both the statements on the petitions and the repetitions of those statements on the affidavits. Leaving aside the question whether such an interpretation would raise double jeopardy issues,[6] in light of the narrow language that Congress used in 18 U.S.C. § 1546(a), I cannot believe that Congress intended to separately criminalize every repetition of the uniform pedigree information required by documents that are addressed to wholly separate inquiries, simply because the documents related to the same alien relative's efforts to secure admission to the United States. Accordingly, I respectfully dissent in part.

---

6. While the majority, citing cases from this Court as well as the Ninth Circuit Court of Appeals, speculates that multiple repetitions of the same lie may be "but one crime," and that it may violate double jeopardy to impose separate punishments for each repetition, *supra,* the majority concedes that the jurisprudence is not settled, and I note that courts in this Circuit have held in the context of perjury that a lie and its repetition are not the same crime and that imposing multiple punishments in such a situation does not violate double jeopardy. *See, e.g., United States v.*

*Bin Laden,* 91 F.Supp.2d 600, 619 (S.D.N.Y. 2000). Under the Ninth Circuit's "additional impediment to government functions" test, the distinct purposes of the documents in which Wu gave false information would arguably be reason to find double jeopardy not violated by the imposition of multiple punishments. *See United States v. Salas–Camacho,* 859 F.2d 788, 791 (9th Cir.1988), *followed by United States v. Newton,* 2002 WL 1285361, at *7 & n. 1 (S.D.N.Y. Jun.10, 2002) (noting that this Court has never dealt with such situation).